UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARI JO SYKES,

                                    Plaintiff,

v.                                                          6:03-CV-0936
                                                            (TJM/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF JOSEPH B. PACHURA, JR.                JOSEPH B. PACHURA, JR., ESQ.
Counsel for Plaintiff
7 Hopper Street
Utica, New York 13501

HON. GLENN T. SUDDABY                           WILLIAM H. PEASE, ESQ.
United States Attorney for the                  Assistant United States Attorney
    Northern District of New York
Counsel for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

Thomas J. McAvoy, Senior United States District Judge

## DECISION & ORDER

## I.      BACKGROUND

### A.      Procedural History

Mari Jo Sykes ("Plaintiff") filed an application for disability insurance benefits ("DIB")

and Supplemental Security Income ("SSI") on August 25, 2000.  (Administrative Transcript ("T")

at 168-170.)  These application were denied on December 5, 2000.  (T. at 157-161.)  Plaintiff

requested a hearing before an Administrative Law Judge ("ALJ") and one was held on July 3,

2001.  (T. at 32-102.)  On September 21, 2001, ALJ John M. Lischak issued a decision finding

that Plaintiff was not disabled.  (T. at 295-300.)

Plaintiff appealed to the Appeals Council, and the Appeals Council remanded the matter

for another hearing (T. at 303-305), which was held on July 12, 2002 (T. at 103-155).  ALJ

Lischak issued a second unfavorable decision on September 18, 2002.  (T. at 18-25.)  This

decision became the final decision of the Commissioner of Social Security ("Defendant") when

the Appeals Council denied Plaintiff's request for review on May 27, 2003.  (T. at 6-8.)  Plaintiff

commenced this action on July 25, 2003.  (Dkt. No. 1.)

### B.    The Contentions

Plaintiff makes the following claims:

1.    The ALJ erred in rejecting the opinions of the treating physicians.  (Dkt. No. 14 at

3-7.)

2.    The ALJ erred in failing to properly consider evidence of Plaintiff's fibromyalgia.

(Dkt. No. 14 at 7-12.)

3.    The ALJ erred in failing to find that Plaintiff's fibromyalgia was a medically

determinable impairment.  (Dkt. No. 14 at 12-13.)

4.    The ALJ erred in finding that Plaintiff retained the residual functional capacity

("RFC") to perform sedentary work with some postural and manipulative limitations.  (Dkt. No.

14 at 13-14.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus

should be affirmed.  (Dkt. No. 15.)

## II.      APPLICABLE LAW

### A.      Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1) (2006)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. §§ 404.1520, 416.920 (2006).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the

3

claimant's] physical or mental ability to do basic work activities."
[20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled; if so, the claimant qualifies.  [20
C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment
is not on the list, the inquiry proceeds to step four, at which the
SSA assesses whether the claimant can do his previous work;
unless he shows that he cannot, he is determined not to be
disabled.[l]  If the claimant survives the fourth stage, the fifth, and
final, step requires the SSA to consider so-called "vocational
factors" (the claimant's age, education, and past work experience),
and to determine whether the claimant is capable of performing
other jobs existing in significant numbers in the national
economy.[l]  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f),
416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably

4

doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

     A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2006); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### III.   THE PLAINTIFF

Plaintiff was born on March 23, 1964.  (T. at 168.)  She received a GED and previously

worked as a secretary; cafeteria assistant; bartender; resident counselor, manager, counselor; and

a human resources assistant.  (T. at 174, 179.)  Plaintiff alleges disability due to fibromyalgia and

low back pain.  (Dkt. No. 14.)

### IV.   THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since

April 24, 2000 (T. at 24); (2) Plaintiff had severe fibromyalgia and low back pain, but that these

impairments did not meet or medically equal one of the impairments listed in Appendix 1 to

Subpart P of Part 404 (*Id.*); (3) Plaintiff's subjective allegations were not fully credible (*Id.*); (4)

Plaintiff had the RFC to perform sedentary work with some postural and manipulative limitations

(*Id.*); (5) considering Plaintiff's RFC for sedentary work, she remained capable of performing

sedentary jobs such as an information clerk, telephone solicitor, and order clerk; jobs which,

according to a vocational expert's testimony, existed in significant numbers in the national

economy, thus Plaintiff was not disabled (*Id.*).

### V.   DISCUSSION

#### A.   Did the ALJ Err in Rejecting the Opinions of Plaintiff's Treating Physicians?

At the outset, the Court notes that Plaintiff's brief on this point consists of the heading

"Did the Administrative Law Judge err in rejecting the opinions of the treating physicians?"; the

subheading "Improperly Rejected the Opinions of the Treating Physicians"; and citations to and

summaries for five cases.  (Dkt. No. 14 at 3-7.)  There is no discussion of how the law applies to

the facts at bar, nor is there even reference to whom Plaintiff considers to be her treating

6

physician(s).[1]  In another section of her brief, Plaintiff refers to Michael Lax, M.D. as her treating

physician[2] and refers to David R. Friedman, M.D. and George E. Spohr, RPA-C,[3] who practiced

at Faxton-St. Luke's Healthcare as her "primary care provider."  (Dkt. No. 14 at 2.)  Nonetheless,

the Court interprets Plaintiff's brief to argue that the ALJ erred in failing to give controlling

weight to the opinions of Plaintiff's treating physicians, Drs. Friedman and Lax.

        The ALJ stated "[c]ontrolling weight has not been given to the opinion and assessments

of the claimant's treating physicians because they are neither supported by the objective clinical

findings nor consistent with the other medical evidence of record."[4]  (T. at 23.)   The medical

opinions of a treating physician[5] are given "controlling weight" as long as they are "well-

supported by medically acceptable clinical and laboratory diagnostic techniques" and are not

inconsistent with other substantial evidence contained in the record.  20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2) (2006).  In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004),

------

[1]      Plaintiff's brief is not compliant with the requirements set forth in this District's
General Order No. 18.

[2]      This is not disputed by Defendant in his brief.  (Dkt. No. 15 at 6.)

[3]      Mr. Spohr is a physicians' assistant and while physicians' assistants are not
"acceptable medical sources" who can provide evidence to establish an impairment, physicians'
assistants are "other sources" who may provide evidence that may be considered to show the
severity of a claimant's impairment(s) and how it affects the claimant's ability to work.  20 C.F.R.
§§ 404.1513(d)(1), 416.913(d)(1).

[4]      The Court notes that in his decision the ALJ did not specifically name the treating
physicians to whom he declined to give controlling weight.  (T. at 23.)

[5]      "Treating source" is defined as one's own physician, psychologist, or other
acceptable medical source who provides medical treatment or evaluation and who has, or has
had, an ongoing treatment relationship with the patient/plaintiff/claimant.  20 C.F.R. §§
404.1502, 416.902 (2006).

the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran v. Barnhart*, 362 F.3d at 32.

However, "[a]n ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Id.* These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). The Regulations further state that "good reasons" will be given for the weight afforded to the treating source's opinion. *Id.*

In this case, the ALJ did not give controlling weight to the opinions of Plaintiff's treating physicians. Setting aside the fact that it is unclear which physicians the ALJ considered treating, because he did not give the treating physicians controlling weight, it was incumbent on the ALJ to consider the factors under 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) and provide "good reasons" for the weight afforded to the treating sources. The ALJ's opinion is devoid of this analysis and, as such, remand is warranted.

Furthermore, remand is warranted because the ALJ has not followed the directions of the Appeals Council.  In remanding the matter, the Appeals Council specifically stated that upon remand, the ALJ will "[g]ive further consideration to the treating and examining source opinions . . . and the nonexamining source opinions . . . and explain the weight given to such opinion evidence."  (T. at 304.)  Although the ALJ's decision summarizes the medical evidence and the opinions of examining and nonexamining sources, the ALJ does not explain the weight given to each.  (T. at 18-25.)  In a conclusory fashion, the ALJ stated that he "considered all of the medical opinions" and declined to give controlling weight to Plaintiff's treating physicians.  (T. at 23.)  This was contrary to the order from the Appeals Council.

Remand also is appropriate because the ALJ referred to "Dr. George Spohr" as Plaintiff's "treating physician's assistant."  (T. at 20; *see also* T. at 22.)  As stated above, Mr. Spohr is a physicians' assistant and not a physician.  To the extent that the ALJ considered Mr. Spohr's opinions and relied upon them as those of a physician's, this was in error.[6]

Plaintiff cited to several cases which were remanded solely for the calculation of benefits.  (Dkt. No. 14 at 3-7.)  Assuming Plaintiff is asking for a recommendation to remand solely for that purpose, this Court declines to do so.  Remand solely for the calculation of benefits is

---

[6]        There are two RFC Assessments in the record that it seems Mr. Spohr attempted to complete.  (T. at 239-243, 277-280.)  The RFC Assessment dated September 29, 2000 (T. at 239-243) is signed by Dr. Friedman, but a comparison of the handwriting with other forms would seem to indicate that it was actually Mr. Spohr who filled out the form.  (*Cf.* T. at 239-243, 369.)  The other RFC Assessment is incomplete, undated, and unsigned; it only contains the notation "I don't have the training to complete this assessment as specified.  I have twenty years of clinical experience and my assessment is that she can do very little lifting/pulling/bending because of her chronic problems.  Light lifting up to 20# would be my opinion.  Please consult Dr. Michael Lax obviously the medical expert in this case."  (T. at 277.)  Based on the handwriting it would appear that Mr. Spohr made this notation, however it is not clear whether this is the opinion of Mr. Spohr or Dr. Friedman.

warranted when there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d. Cir. 1999). On the other hand, "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have . . . remanded to the [Commissioner] for further development of the evidence." *Id.* (citations and internal quotation marks omitted).

In this case, remand for further proceedings is appropriate because the ALJ did not properly apply the treating physician rule. Upon remand, the ALJ shall, among other things, consider all of the medical evidence, determine whether controlling weight should be given to Plaintiff's treating physicians, specifically state in his decision what weight is being given to which physician, and clearly explain his decision. If necessary, the ALJ should contact Dr. Friedman and, at the very least, clarify whether the opinions in the record are those of Dr. Friedman's or Mr. Spohr's. The Court acknowledges that the Appeals Council gave similar directions to the ALJ which he failed to follow. Notwithstanding this error, remand solely for the calculation of benefits is not warranted because this is not a case where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Instead, this is one where there are gaps in the administrative record and one where the ALJ has not properly applied the treating physician rule.

### B.      Did the ALJ Fail to Properly Consider Plaintiff's Fibromyalgia?

Plaintiff's heading and subheading for point two are "Did the Administrative Law Judge err in failing to consider the diagnosis of fibromyalgia in his assessment of disability?" and "Failure to Properly Consider Evidence of Fibromyalgia." (Dkt. No. 14 at 7.) Again, without any analysis and application of the cases to the facts at bar, it is somewhat unclear what Plaintiff

is trying to argue.  In response, Defendant argues that Plaintiff's arguments fails because the ALJ found that Plaintiff had fibromyalgia and that it was a severe impairment.  (Dkt. No. 15 at 5.)

      To the extent Plaintiff is arguing that the ALJ failed to consider her fibromyalgia in his analysis, this argument is without merit.  Indeed the ALJ did acknowledge Plaintiff's diagnosis of fibromyalgia and found that it was severe.  (T. at 20, 21, 22.)  Accordingly, remand is not warranted based upon the argument that the ALJ failed to consider evidence of Plaintiff's fibromyalgia.

      Several of the cases cited by Plaintiff refer to the assessment of a claimant's credibility the with respect to the symptoms alleged.  The Court interprets this as an argument that the ALJ erred in finding that Plaintiff's subjective allegations were not fully credible.

      "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2006); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) and SSR 96-7p.  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms.  SSR 96-7p.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the

claimant's pain or other symptoms. *Id.* If no impairment is found which could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

However, once an underlying physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Id.* Whenever a claimant's statements about the intensity, persistence, or limiting effects of the claimant's pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the claimant's credibility. *Id.* A claimant's symptoms will be determined to diminish his/her capacity for basic work activities to the extent that his/her alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record. *Id.*

A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. *Id.* When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating

12

factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3) (2006).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Plaintiff's fibromyalgia, low back pain, and their resulting symptoms were clearly documented in the record.  Thus, the first step of the two-step analysis is met because Plaintiff had medically determinable mental and/or physical impairments that could reasonably be expected to produce her symptoms.  Turning to step two, the ALJ then had to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limited Plaintiff's ability to perform basic work activities.  It would seem as though there is some record evidence to support Plaintiff's complaints, and as such, the ALJ may have erred in finding that Plaintiff's subjective allegations were not fully credible.  For example, Dr. Lax opined that Plaintiff could sit, stand, and walk for up to three hours a day, however it had to be a day where her pain was minimal.  (T. at 409.)  If Plaintiff's pain was severe, Dr. Lax stated that Plaintiff would not be able to perform any of those activities.  (*Id.*)

Because the Court is remanding this case as stated above, upon remand, the ALJ should provide a detailed analysis of Plaintiff's credibility, paying particular attention to the symptom-related factors under 20 C.F.R. § 404.1529(c)(3) listed above, if he finds that the Plaintiff's symptoms suggest a greater level of severity than is shown by the objective medical evidence alone.

### C.    Did the ALJ Err in Failing to Assess Fibromyalgia as a Medically Determinable Impairment?

Plaintiff's heading and subheading for point three read "Did the Administrative Law Judge err in not assessing fibromyalgia as a medically determinable impairment?" and "Fibromyalgia is a Medically Determinable Impairment." (Dkt. No. 14 at 12.)  Again, without any analysis of the facts of the instant case, it is unclear what Plaintiff is arguing.  To the extent that Plaintiff is arguing that the ALJ did not recognize her fibromyalgia as an impairment, that argument is baseless.  The ALJ clearly recognized Plaintiff's diagnosis of fibromyalgia and considered it severe.  (T. at 22.)  Accordingly, remand is not warranted on this ground.

### D.    Did the ALJ Err in Finding That Plaintiff Retained the RFC to Perform Sedentary Work with Some Postural and Manipulative Limitations?

Plaintiff seemingly makes two points: (1) that the ALJ improperly dismissed "the residual functional capacity evaluation of the examining physician" on the basis that "their opinions are not consistent by the other evidence of the record" and (2) that the hypothetical posed to the vocational expert did not take into consideration Plaintiff's pain.  (Dkt. No. 14 at 13-14.)

#### 1.    Plaintiff's RFC

Plaintiff argues that the ALJ erred by rejecting the RFC Assessments of "the treating and examining physicians." (Dkt. No. 14 at 13-14.)  The ALJ found that Plaintiff was capable of

14

performing sedentary work[7] with some postural limitations and limited reaching, handling,

pushing, and pulling.  (T. at 23.)  In making this finding, the ALJ rejected the opinions of Dr.

Lax, who opined in 2000 that Plaintiff could sit for less than six hours per day and had postural

and manipulative limitation, specifically that Plaintiff should not maintain a static posture or

engage in repetitive motions of her neck, back, and upper extremities.  (T. at 251.)  Dr. Lax's

2002 RFC Assessment was even more restrictive.  (T. at 355-358.)  In it, he stated that Plaintiff

could only sit, stand, and walk for up to three hours per day and only for one hour without

interruption.  (T. at 356.)  A disability analyst[8] completed an RFC Assessment on November 24,

2000 and found that Plaintiff could sit for a total of six hours in an eight-hour workday.  (T. at

268.)

     The ALJ's finding with regard to Plaintiff's RFC seems to be based mainly upon the

November, 24, 2000 RFC Assessment completed by the disability analyst.[9]  To the extent that the

---

[7]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

[8]    It is unclear whether this disability analyst is a physician or not; the form asks for the "medical consultant's signature" and the disability analyst crossed out "medical consultant's" and signed the form, including his/her title of "Disability Analyst II."  (T. at 274.)  Similarly, the form asks for the "medical consultant's code" and the disability analyst also crossed out the designation "medical consultant's."  (*Id.*)

[9]    The Court makes this conclusion based upon the language of the ALJ's decision in which he states "[t]he undersigned further finds that the claimant is capable of performing sedentary work with some postural limitations and limited reaching, handling, pushing and pulling."  (T. at 23.)  Earlier in his decision the ALJ stated: "State Agency review physicians reviewed the medical record and opined in November 2000, that the claimant could perform sedentary work with some postural limitations."  (T. at 21.)  Furthermore, the RFC Assessments

ALJ relied upon this assessment as that of a physician, instead of a "Disability Analyst II," this may have been erroneous because neither the ALJ's decision nor the record explains whether a disability analyst is indeed a physician.  To the extent that a disability analyst is not a physician, the disability analyst may not be an "acceptable medical source," who may provide evidence as to establish whether a claimant has a medically determinable impairment.  20 C.F.R. §§ 404.1513(a), 416.913(a).  Even assuming the disability analyst is a physician, the ALJ provided no explanation for why he rejected the opinions of Plaintiff's treating physicians, opting instead to rely on an assessment by a non-examining, agency disability analyst.  20 C.F.R. §§ 404.1527 (d)(1), 416.927(d)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.")  Accordingly, remand is warranted for reevaluation of Plaintiff's RFC.

### 2.    Proper Hypothetical

Finally, Plaintiff argues that the ALJ erred when he gave the vocational expert a hypothetical which did not take Plaintiff's pain into consideration.  (Dkt. No. 14 at 14.)  In determining whether a claimant's work skills can be used in other work,[10] an ALJ may utilize the services of a vocational expert.  20 C.F.R. §§ 404.1566(e), 416.966(e) (2006).  A vocational expert may provide testimony regarding the existence of jobs in the national economy and

———————————————

of Dr. Lax, Plaintiff's treating physician, were much more restrictive.

[10]      In this case, the ALJ had to determine whether Plaintiff could perform other work because at the fourth step of the sequential evaluation, he found that Plaintiff retained the RFC to perform sedentary work, with some postural and manipulative limitations, but was incapable of returning to her prior relevant work.  (T. at 23.)  According to the sequential evaluation, at the fifth step, it must be determined whether a claimant can make an adjustment to other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2006).

whether a particular claimant may be able to perform any of those jobs given his or her functional limitations.  *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988) and *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).  Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence,[11] a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Secretary of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) and *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996).  The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based [her] opinion."  *Dumas*, 712 F.2d at 1554.

Because remand has been ordered as discussed above, it would follow that remand is necessary because the question of whether a hypothetical is proper or not depends on the accurate presentation of Plaintiff's impairments.  As discussed above, remand is being ordered because the ALJ improperly applied the treating physician rule and for reevaluation of Plaintiff's RFC.  Upon remand, it is presumed that the ALJ will evaluate all of the medical evidence and make a finding as to Plaintiff's RFC.  If the ALJ reaches the fifth step and determines that further testimony from a vocational expert is necessary, the Court presumes that the ALJ will procure such testimony.  It is also presumed that if further testimony from a vocational expert is necessary, the ALJ will present hypothetical(s) which accurately portray Plaintiff's impairments and their resulting limitation(s).

---

[11]     *Dumas*, 712 F.2d at 1554 n.4.

**WHEREFORE,** it is hereby

**ORDERED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[12] for further proceedings consistent with the above.

Dated:   September 27, 2007

Thomas J. McAvoy
Senior, U.S. District Judge

_____

[12]       Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).